

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00059-CR

BENNIE WILLIAMS                                                 APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A Denton County petit jury found Appellant, Bennie Williams, guilty of one count of burglary of a habitation.  *See* Tex. Penal Code Ann. § 30.02 (West 2011).  The jury assessed Williams's punishment, enhanced by one prior felony conviction, at imprisonment for forty-two years.  On appeal to this court, Williams brings two points of error, in which he raises several arguments regarding trial

---

[1]*See* Tex. R. App. P. 47.4.

court error and trial counsel's failure to render effective assistance. We reject Williams's arguments, overrule his points of error, and affirm the trial court's judgment.

## The Relevant Facts

A brief review of certain procedural facts is necessary to an understanding of Williams's points of error.

On January 13, 2011, a Denton County grand jury returned an indictment charging Williams with one count of burglary of a habitation. The indictment alleged that, on or about October 25, 2010, Williams burglarized the home of Laura Rivera in Denton County. The indictment also alleged, for purposes of punishment enhancement, that Williams had one prior felony conviction.

On January 23, 2012, the trial court held a pretrial hearing in this case. At that hearing, Williams's trial counsel questioned him on the record regarding whether Williams understood the potential consequences of his decision to reject the State's plea offer and to proceed to trial. During the course of trial counsel's questioning, the record reflects:

> Q. [TRIAL COUNSEL] Now, there was a new issue that was brought up just a while ago when I was speaking to you, and you seem to feel very strongly you want to bring in the co-defendant [Jeremy Liversage[2]] as a witness?
>
> A. Yes, I do.

---

[2] It appears from the record that Liversage was charged by information and pled guilty.

2

Q. I told you that is not something I want to do.

A. Yes, you did that. You said that.

Q. I said you have certain choices you can make: You can decide if you want to testify, you can decide if you want to go to trial, you can decide what kind of trial you go to. But, ultimately, who testifies lies with me, I told you that; is that correct?

A. I didn't understand you clearly. What you mean, you're going to --

Q. That I make those decisions of who testifies, who doesn't testify; you understand that?

A. (No response.)

Q. Did I tell you that?

A. (No response.)

Q. Did I tell you that?

A. You told me something along those lines, yes.

Q. I wanted to ask you that now because you told me at that point you wanted to get another attorney, correct?

A. One to where I could bring the co-defendant in, yes.

Q. So at this point, it's your chance if you want to tell the Judge anything about this, because at this point I'm your court-appointed attorney, and I will be your attorney during the trial.

I have no further questions. If you have anything to ask or say to the judge, this is your chance.

[APPELLANT]:  Well, I would like to have a lawyer that will get the co-defendant in to where he could be questioned and know this charge I have against me, Your Honor.

THE COURT:  And as your attorney clearly told you, that is a decision that the attorney makes.  You don't make those decisions, because they understand the law and they understand the consequences for you.  And so I'm not going to --

Are you asking me to appoint another attorney to you?

[APPELLANT]:  I'm just trying to get someone to where I can bring this witness in, I mean, the co-defendant, to why he should be called.  The things he explained to me in that discovery is not true, and I would like it further to be brought out in the court of law to see that he's lying about some things that's not true.

THE COURT:  Well, those decisions are to be made by attorneys, not by the defendant.

And at this point, did the state have any questions or any comments?

[THE STATE]:  No, Your Honor.

THE COURT:  Is the State's position on the plea offer -- do you have an offer on the table at this time?

[THE STATE]:  Yes, there was an offer on the table that has been rejected.  I told [Williams's trial counsel] if we were anywhere close, we would entertain further discussions.  Sounds to me like some issues that may or may not [a]ffect some parole things, that he cannot take anything.

THE COURT:  All right.
Mr. Williams, at this time I'm just going to advise you, I'm not going to appoint another attorney to you.

4

On February 7, 2012, the State brought Williams to trial under the indictment. The trial lasted two days. At the guilt-innocence stage of trial, the State presented five witnesses and the defense presented none. Williams's co-defendant, Liversage, was not present and did not testify. At the conclusion of the guilt-innocence stage, the jury found Williams guilty as charged in the indictment. After hearing additional evidence at the punishment stage, the jury assessed Williams's punishment, as noted previously, at imprisonment for forty-two years.

On March 5, 2012, Williams, now represented by appellate counsel, filed a motion for new trial, in which he alleged that his trial counsel, in failing to call Liversage as a witness, had rendered ineffective assistance. Williams argued in the motion that he "believe[d]" that Liversage would have testified that Williams had not participated in the burglary or would have offered other testimony beneficial to Williams.

On April 12, 2012, the trial court held an evidentiary hearing on Williams's motion for new trial. At that hearing, Williams's trial counsel testified that he had not called Liversage as a witness because "Liversage blamed . . . Williams completely for the crime, and I didn't feel it was going to be beneficial to have him . . . testify." Trial counsel testified further that his decision not to call Liversage as a witness had been based on "the interrogation of Mr. Williams, the interrogation of Mr. Liversage, the police reports, the photo lineup of Mr. Liversage, the statements from the owner of the house, [and] the statement from the witness

5

that called the police." Finally, trial counsel testified that Liversage's version of the day of the offense "was quite different from the version of my client, and the total blame was placed on my client, so I didn't think it [would be] fruitful [to have Liversage testify]." At the conclusion of the hearing on Williams's motion for new trial, the trial court denied the motion.

## POINT OF ERROR NUMBER ONE

In his first point of error, Williams argues that the trial court erred by "failing to grant [his] request to subpoena the co-defendant to testify" and by "failing to advise him of his right to self-representation." He argues further that his pretrial "request for new counsel who [would] subpoena the co-defendant amount[ed] to asking that, if it [were] the only possibility to secure such testimony, that he be allowed to represent himself." Williams argues finally that the trial court also erred by not advising him of the related possibilities of hybrid representation or of utilizing standby counsel.

We turn first to Williams's argument that the trial court erred by failing to grant his request to subpoena the co-defendant to testify. We must reject this argument because the decision whether to subpoena a witness to testify rests with trial counsel, not the trial court. *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S. Ct. 646, 658 (1988).

We turn next to Williams's argument that the trial court erred by failing to advise him of his right to self-representation. The Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth

6

Amendment, guarantees the right to self-representation in a state criminal prosecution. *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527 (1975). This right to self-representation does not attach, however, until it has been clearly and unequivocally asserted. *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986). Absent such a clear and unequivocal assertion, a trial court has no duty to inform or admonish a defendant regarding his right to self-representation. *See* 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.5(b) (3d ed. 2013) (citing cases).

The record reflects that Williams, before the trial court, never clearly and unequivocally asserted his right to self-representation. Therefore, the trial court had no duty to inform or admonish him regarding that right. *See Funderburg*, 717 S.W.2d at 642. We overrule point of error number one.

**POINT OF ERROR NUMBER TWO**

In his second point of error, Williams argues that his trial counsel rendered ineffective assistance by "failing to subpoena the . . . co-defendant as [he] requested" and in "failing to advise [him] of his right to self-representation." Williams argues further that trial counsel's failure to subpoena the co-defendant denied him his right to confront the witnesses against him. Williams also argues that his trial counsel rendered ineffective assistance in "failing to . . . thoroughly investigat[e] the offense by not contacting the co-defendant and relying solely on the discovery received from the State." This failure-to-investigate argument apparently relates to the claim regarding trial counsel's failure to subpoena the

7

co-defendant to testify. Finally, Williams argues that his trial counsel rendered ineffective assistance because he "never objected to any evidence or called any witness" and because he admitted before the jury that Liversage was guilty of the charged offense.

We turn first to Williams's argument that trial counsel rendered ineffective assistance in failing to subpoena the co-defendant to testify. The Sixth Amendment guarantees the effective assistance of counsel in a state felony prosecution. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449 n.14 (1970). To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). An ineffective-assistance claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Id.* (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14. This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 814. To overcome the presumption of reasonable professional assistance, "'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Salinas*, 163 S.W.3d at 740 (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial

9

counsel "'should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.'" *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)).  If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).  The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

If a defendant attempts to demonstrate that trial counsel's performance fell below an objective standard of reasonableness because he failed to subpoena a witness to testify, the defendant must show that the witness was available to testify at trial and would have provided testimony beneficial to the defendant. *See Holland v. State*, 761 S.W.2d 307, 319 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1091 (1989).

10

Here, Williams has failed to show that Liversage, had he been subpoenaed by trial counsel to testify, would have provided testimony beneficial to him. Therefore, Williams has failed to demonstrate that trial counsel, in failing to subpoena Liversage, acted unprofessionally. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

We turn next to Williams's argument that trial counsel's failure to subpoena Liversage denied him his right to confront the witnesses against him. The Sixth Amendment guarantees to a criminal defendant the right to confront the witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004). Here, however, Williams's right to confrontation was never implicated because Liversage's testimony was not used against Williams at his trial.

We turn next to Williams's argument that his trial counsel rendered ineffective assistance because he failed to object to any evidence at trial, failed to call any witnesses, and because he admitted before the jury that Liversage was guilty of the charged offense. We note that Williams has not attempted to demonstrate that there is a reasonable probability that, but for these supposedly unprofessional errors on the part of trial counsel, the result of his trial would have been different. It is certainly not our duty, as an appellate court, to scrutinize the record and speculate how trial counsel's actions and inactions might have affected the jury's deliberations. We conclude again that Williams has failed to demonstrate ineffective assistance.

We turn finally to Williams's argument that trial counsel rendered ineffective assistance by failing to advise him of his right to self-representation. We note that Williams has provided no argument or authority for the proposition that trial counsel had a duty to advise him regarding his right to self-representation. We decline to impose such a duty ourselves. We overrule Williams's second point of error.

## CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.

PER CURIAM

PANEL: CHARLES F. CAMPBELL (Senior Judge, Retired, Sitting By Assignment); WALKER and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 9, 2014